## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

DONNA GRZYBOWSKI,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

1:19-cv-13097-NLH

**OPINION**

---

**APPEARANCES:**

LAUREN S. TOVINSKY
JACOBS SCHWABLE & PETRUZELLI PC
10 MELROSE AVENUE
SUITE 340
CHERRY HILL, NJ 08003

     *On behalf of Plaintiff*

QUINN E.N. DOGGETT
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

     *On behalf of Defendant*

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] and Supplemental Security Income

---

[1] DIB is a program under the Social Security Act to provide

("SSI")[2] under Title II and Title XVI of the Social Security Act.[3]  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled as of May 29, 2016.  For the reasons stated below, this Court will reverse that decision and remand the matter for further consideration consistent with this Opinion.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Donna Grzybowski, protectively filed[4] an

---

disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[2] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[3] The standard for determining whether a claimant is disabled is the same for both DIB and SSI.  See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945).  The Court will provide citations only to the DIB regulations.  See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

[4] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file

application for DIB on January 5, 2017 and for SSI on January 6, 2017 alleging that she became disabled as of May 29, 2016,[5] when she was struck by a car while crossing the street, suffering multiple injuries.  Plaintiff, who was 58 years old at the time of the accident,[6] claims that she can no longer work at her previous job as a cook helper because of her impairments of wrist fractures, anxiety, and depression, among other impairments.

After Plaintiff's claim was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on December 13, 2018.  On February 6, 2019, the

_____

for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

[5] Even though Plaintiff contends that her onset date of disability is May 29, 2016, the relevant period for Plaintiff's SSI claim begins with her January 6, 2017 application date, through the date of the ALJ's decision on February 6, 2019.  See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which he or she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he or she satisfies the eligibility requirements, which cannot predate the date on which an application was filed).  This difference between eligibility for SSI and DIB is not material to the Court's analysis of Plaintiff's appeal.

[6] Plaintiff's age on her alleged disability onset date rendered her "advanced age" under the Social Security regulations.  See 20 C.F.R. § 404.1563(e) ("We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older).").

3

ALJ issued an unfavorable decision.  Plaintiff's Request for
Review of Hearing Decision was denied by the Appeals Council on
February 11, 2019, making the ALJ's decision final.  Plaintiff
brings this civil action for review of the Commissioner's
decision.

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial
review of the Commissioner's decision to deny a complainant's
application for social security benefits.  Ventura v. Shalala,
55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold
the Commissioner's factual decisions where they are supported by
"substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3);
Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v.
Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan,
970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means
more than "a mere scintilla."  Richardson v. Perales, 402 U.S.
389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305
U.S. 197, 229 (1938)).  It means "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  Id.  The inquiry is not whether the reviewing
court would have made the same determination, but whether the
Commissioner's conclusion was reasonable.  See Brown v. Bowen,
845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative

5

> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review,

a district court is not "empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder."

Williams, 970 F.2d at 1182.  However, apart from the substantial

evidence inquiry, a reviewing court is entitled to satisfy

itself that the Commissioner arrived at his decision by

application of the proper legal standards.  Sykes, 228 F.3d at

262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.   Standard for DIB and SSI**

    The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any substantial

gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in

death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if his physical or mental impairments are of such
severity that he is not only unable to perform his past relevant
work, but cannot, given his age, education, and work experience,
engage in any other type of substantial gainful work which
exists in the national economy, regardless of whether such work
exists in the immediate area in which he lives, or whether a
specific job vacancy exists for him, or whether he would be
hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

The Commissioner has promulgated regulations[7] for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step
process is summarized as follows:

1.   If the claimant currently is engaged in substantial
     gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe
     impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed
     impairment in 20 C.F.R. Part 404, Subpart P, Appendix
     1 and has lasted or is expected to last for a
     continuous period of at least twelve months, the
     claimant will be found "disabled."

---

[7] Various provisions of the regulations were amended effective
March 27, 2017.  See 82 F.R. 5844.  The parties do not argue
that any of these amendments are relevant to Plaintiff's appeal.

4.    If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.    Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.  See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.    Analysis**

At step one, the ALJ found that Plaintiff had not engaged

8

in substantial gainful activity since the alleged onset of
disability.  At step two, the ALJ found that Plaintiff's
impairments of wrist fractures, anxiety, and depression were
severe.  At step three, the ALJ determined that Plaintiff's
severe impairments or her severe impairments in combination with
her other impairments did not equal the severity of one of the
listed impairments.  At step four, the ALJ determined that
Plaintiff had the residual functional capacity ("RFC") to
perform work at exertional levels, with certain restrictions.[8]
At step five, the ALJ determined that Plaintiff was not capable
of performing her past relevant work as a cook helper, but after
hearing testimony from a vocational expert, the ALJ determined
that Plaintiff was capable of performing other jobs in the
national economy, such as a dry-cleaning machine operator, linen
room attendant, and a hospital housekeeper.

Plaintiff argues that the ALJ erred in several ways, but
primarily on two bases: (1) the ALJ's finding that Plaintiff's
RFC enabled her to perform work at all exertional levels without
any physical restrictions is not supported by the record, and

---

[8] 20 C.F.R. § 404.1568 ("In order to evaluate your skills and to
help determine the existence in the national economy of work you
are able to do, occupations are classified as unskilled, semi-
skilled, and skilled."); 20 C.F.R. § 404.1567 ("Physical
exertion requirements. To determine the physical exertion
requirements of work in the national economy, we classify jobs
as sedentary, light, medium, heavy, and very heavy.").

(2) the ALJ's failure to consider Plaintiff's four-day-a-week, three-hour-a-day outpatient mental health and addiction treatment in her determination that Plaintiff retained the RFC to perform full-time work at all exertional levels is in error. This Court agrees with Plaintiff on both points.

As noted above, on May 29, 2016, Plaintiff was hit by a car while crossing the street and suffered numerous injuries, including two fractured wrists, a fractured left ankle, and a fractured fibula.  Plaintiff was in the hospital for ten days and underwent several surgeries.  Metal plating and screws were inserted in both wrists and her left ankle.

After considering the medical evidence and Plaintiff's testimony at the hearing before the ALJ, the ALJ determined that Plaintiff's impairments to both of her wrists constituted severe impairments at step two.  The ALJ found that Plaintiff's other physical impairments minimally affected Plaintiff's ability to perform daily living activities and those impairments, although medically determinable, were not severe.  With regard to Plaintiff's non-exertional impairments, the ALJ determined that Plaintiff's anxiety and depression were severe.

The ALJ concluded that Plaintiff retained the following RFC[9]:

---

[9]  The RFC reflects "what [the claimant] can still do despite [his or her] limitations."  20 C.F.R. § 416.945(a).

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She is limited to simple, routine tasks. She is limited to work in a low stress job, defined as having only occasional decision making and only occasional changes in the work setting. She is limited to work with occasional judgment required on the job. She is limited to frequent fingering and handling with her dominant hand.

(R. at 17.)

In determining Plaintiff's RFC, the ALJ was required to consider all of Plaintiff's severe impairments, in addition to her non-severe impairments, in combination.[10]  Then, based on this RFC, the ALJ was required to determine whether jobs exist in the national economy that Plaintiff was capable of performing.  The ALJ failed in these requirements in two significant ways.

First, the ALJ failed to articulate how Plaintiff's severe impairments in both her wrists, not just her right wrist, did not impact her ability to perform work at all exertional ranges. A severe exertional impairment is one that significantly limits a claimant's physical ability to do basic work activities.  20 C.F.R. § 404.1522.  The assessment of a claimant's exertional capacity "addresses an individual's limitations and restrictions

---

[10] See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p.  An ALJ must consider each of these functions "separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities (e.g., 'walk/stand, lift/carry, push/pull')."  Id.

The ALJ's finding that Plaintiff could perform work at all exertional levels meant that Plaintiff was capable of performing "very heavy work," which "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more."[11]  20 C.F.R. § 404.1567. The ALJ's decision is silent, however, as to how Plaintiff's severe wrist impairments, and other non-severe but medically determinable impairments, support that conclusion.

Presumably, the ALJ concluded that Plaintiff's impairments presented no physical limitations in her capacity to work at all exertional levels based on a reference to treatment notes by Plaintiff's family physician, Dr. Jonathan Wiseman.  In her decision, the ALJ stated the following twice: "Records from Dr.

---

[11] If someone can do very heavy work, that means that he or she can also do heavy, medium, light and sedentary work. 20 C.F.R. § 404.1567.

Wiseman from April 2017 through October 2018 repeatedly show normal musculoskeletal examination findings." (R. at 16, 18.) Accepting this presumption as true, it is unclear how such a finding can be reconciled with the ALJ's determination that Plaintiff suffered from severe impairments in her wrists. If Plaintiff's physical condition was "normal," then Plaintiff's impairments to her wrists could not be considered "severe." A severe impairment means that such an impairment significantly limits a claimant's physical ability to do basic work activities. The severe impairments of Plaintiff's wrists, therefore, must have some impact on Plaintiff's ability to work, because otherwise those impairments would not meet the statutory definition of "severe."

Moreover, the Court's review of Dr. Wiseman's records do not support the conclusion that Plaintiff's musculoskeletal examination findings were "normal" from April 2017 through October 2018. Over the course of Plaintiff's treatment with Dr. Wiseman, when Plaintiff presented to Dr. Wiseman for her physical condition, instead of checking "none" regarding "musculoskeletal symptoms," Dr. Wiseman checked "joint pain," "decreased motion," and "stiffness," or a variation of those symptoms. Only when Plaintiff presented to Dr. Wiseman for a "sick visit" regarding respiratory ailments, or for her mental impairments and related medications, did the treatment visit

13

forms fail to reflect Plaintiff's musculoskeletal condition. (See R. at 412-483.)  The absence of a check-in-the-box for Plaintiff's physical impairments on the treatment records for Plaintiff's other impairments does not support the inference that Plaintiff had no physical impairments at that time.  The ALJ points to no record evidence where Dr. Wiseman affirmatively states that Plaintiff's musculoskeletal condition was "normal." Thus, these records standing alone do not present substantial evidence to support the ALJ's conclusion that Plaintiff's physical impairments posed no limitation on Plaintiff's RFC.

Additionally, the ALJ fails to address Plaintiff's testimony about her orthopedic injuries.  Plaintiff testified that she has tingling and numbness that makes it difficult for her to tie her shoes, lift a gallon of milk, or use her hands to button buttons or zipper zippers.  (R. at 40-41, 43, 53, 54.) Plaintiff also testified that she can only walk approximately 10 minutes before needing a break, she walks slowly and sometimes with a cane due to pain, and she has difficulty using stairs. (R. at 41-42, 54-55.)  Plaintiff further testified that these symptoms impede her ability to attend to her personal needs like showering and dressing.  (R. 55.)  The ALJ does not cite to any medical evidence that contradicts Plaintiff's testimony, other than the conclusory, unsupported statement regarding Dr. Wiseman's records.

In short, the ALJ failed to connect the dots between her finding that Plaintiff suffered from severe impairments to both of her wrists and the finding that Plaintiff had the ability to perform work at all exertional levels without any limitations for those severe impairments, singly or in combination with her non-severe impairments.

The ALJ's RFC assessment is faulty in a second way regarding Plaintiff's mental impairments.  Plaintiff regularly attended a mental health and addiction treatment program three hours a day, four days a week, at STABLE Community Resources.[12] Plaintiff's mental health condition was exacerbated by the accident, and it caused her addiction to opiates.  Plaintiff testified that through continued addiction counseling, she had been clean from her substance abuse for the past year. Plaintiff also received mental health counseling for her depression and anxiety.  (R. at 37.)

In the decision, the ALJ only references Plaintiff's ongoing treatment at STABLE once:  "In May 2018, the claimant began individual therapy for depression and anxiety at Stable Community Services.  On December 12, 2018, Stacey D. Waller, LSW, noted that the claimant received outpatient treatment for major depression and a history of substance abuse.  She noted

---

[12] Plaintiff testified that she attended a different outpatient treatment facility prior to STABLE.  (R. at 38.)

that the claimant was scheduled to attend treatment four days a
week." (R. at 19.)

In the rest of her decision, including the formulation of
Plaintiff's RFC, the ALJ does not address how Plaintiff's
treatment at STABLE does, or does not, impact her ability to
work full-time.  At the hearing, the ALJ posed a hypothetical to
the VE with the RFC the ALJ ultimately concluded to be
Plaintiff's, and the VE testified that jobs would be available
for Plaintiff to perform, such as a dry-cleaning machine
attendant, a linen room attendant, and a hospital housekeeper.
(R. at 60-62.)

The ALJ posed two additional hypotheticals to the VE:

Q Okay. Now, for a second hypothetical, our
hypothetical individual, in addition to those other non-
exertional limitations would be off-task at least 15
percent of the day. Will that eliminate all work?

A It would, your honor.

Q All right. And lastly, if our hypothetical
individual was out of work for unexcused or medical
absences at least two days per month, would that also
eliminate all work?

A It would, your honor.

(R. at 62.)

Thus, the VE testified that if a person with Plaintiff's
RFC was not able to perform their work 15 percent of a day, or
they would be absent from work two days a month, no jobs would
be available for either of those persons to perform.  The ALJ,

16

however, does not explain how jobs would be available to Plaintiff, who under her current treatment plan at STABLE would be absent from work at least three hours each day, four days a week, which is significantly more absences that the hypotheticals posed to the VE.  See SSR 96-8p ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

The ALJ's decision that Plaintiff has the ability to work full-time in the jobs identified by the VE necessarily presumes that Plaintiff would need to, and would be able to, stop her current treatment at STABLE.  Perhaps it would be appropriate for Plaintiff to alter her mental health and addiction treatment plan so that she could meet the requirements of full-time work, but the ALJ does not cite to any record evidence to support such a presumption.  Instead, the ALJ appears to completely ignore Plaintiff's testimony and documentation regarding her treatment at STABLE when she formulated Plaintiff's RFC.

In making the RFC assessment an ALJ is required to consider all evidence before her.  "In doing so, an ALJ may not make speculative inferences from medical reports," she is "not free to employ [her] own expertise against that of a physician who

17

presents competent medical evidence," and "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted). Additionally, the ALJ cannot substitute her own lay opinion over the record evidence. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (finding that the ALJ improperly supplanted the opinions of the plaintiff's treating and examining physicians with his personal observation and speculation, and directing that "in choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion" (citations and quotations omitted)). Significantly, the "principle that an ALJ should not substitute [her] lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." Id. at 319.

In this case, in addition to improperly inferring that the treatment records of Plaintiff's primary care physician affirmatively stated that Plaintiff's musculoskeletal functioning was "normal," the ALJ failed to account for Plaintiff's treatment at STABLE, or she improperly substituted

her own lay opinion without support from the record that Plaintiff could effectively cease her mental health and addiction treatment and work full-time.  For both of these reasons, the matter must be remanded to the ALJ so that the ALJ may properly support the assessment of Plaintiff's RFC.

### III. Conclusion

For the reasons expressed above, the decision of the ALJ is not supported by substantial evidence and must be reversed.  The matter shall be remanded for further consideration consistent with this Opinion.  The Court expresses no view as to whether, after a full review and explanation of the record evidence, Plaintiff should be found disabled or not under the applicable regulations.

An accompanying Order will be issued.


Date: May 13, 2020                         s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.